# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THEODORE SCOTT SMITH** | **CIVIL ACTION** |
| **versus** | **NO. 07-2727** |
| **BURL CAIN, WARDEN** | **SECTION: "N" (6)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of

without an evidentiary hearing.  *See* 28 U.S.C. §2254(e)(2).[1]  Therefore, for the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE AS UNTIMELY**.

<u>BACKGROUND</u>

Petitioner, Theodore Scott Smith, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  On November 20, 1997, Smith was convicted by a jury of armed robbery, in violation of LSA-R.S. 14:64.[2]  On June 3, 1998, he was adjudicated a third felony offender and was sentenced to a term of life imprisonment without benefit of parole, probation or suspension of sentence. On appeal on June 25, 1999, the Louisiana First Circuit Court of Appeal vacated Smith's habitual offender adjudication and sentence and remanded the case for a hearing and disposition on defendant's motion for post-verdict judgment of

---

[1]Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. §2254(e)(2)(A)(I)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. §2254(e)(2)(B)).

[2]*State v. Smith*, Case No. 274151, Div. "D", Twenty-Second Judicial District Court for the Parish of St. Tammany; *See also* Transcript of Jury Trial in State Rec. Vol. 5.

acquittal, which the trial court had failed to rule upon prior to sentencing.[3] On

November 8, 1999, after remand, the trial court held a hearing and denied the

motion for post-judgment of acquittal.[4] On November 12, 1999, the trial court

sentenced Smith to imprisonment at hard labor for fifty years without benefit of

parole, probation or suspension of sentence. On January 3, 2000, the trial court

conducted a hearing and subsequently adjudicated Smith to be a third felony

offender, sentencing him once again to life imprisonment without  benefit of

parole, probation or suspension of sentence.[5]  Petitioner thereafter appealed, raising

four assignments of error.[6]   The Louisiana Court of Appeal, First Circuit, affirmed

the conviction, habitual offender adjudication and sentencing on November 3,

2000.[7]   On February 16, 2001, petitioner's request for a supervisory writ to the

---

[3]*See State v. Smith*, 744 So.2d 224 (La. App. 1ˢᵗ Cir. 6/25/99)(Table); See *also State v. Smith*, 769 So.2d 1280, 1281-82 (November 3, 2000), for a discussion of the procedural history.

[4]State Rec. Vol. 9, Transcript of Proceedings dated 11/8/99.

[5]State Rec. Vol. 1 or Vol. 9, Transcript of Proceedings dated January 3, 2000.

[6]Petitioner claimed the trial court erred during the habitual offender proceedings when it did not vacate the November 12, 1999 sentence, that the sentence was excessive and given without sufficient reasons, that the trial court erred in failing to provide written reasons why petitioner was adjudicated a third felony offender, and, the trial court failed to advise him of the time limitations for filing post-conviction proceedings. *See State v. Smith*, 769 So.2d at 1283-1285.

[7]*Id.*, a copy of which can be found in State Rec. Vol. 8.

Louisiana Supreme Court was metered and the pleading was filed into the record on April 9, 2001.[8] The Louisiana Supreme Court denied Smith's writ application from the appeal of his conviction and sentence on December 14, 2001.[9]

The parties agree that on September 16, 2002, petitioner filed his first application for post-conviction relief (PCR) in the state trial court.[10] This application was signed and dated on September 11, 2002, thus petitioner is given the benefit of his signing date under the mailbox rule.[11] On February 11, 2003, the PCR was dismissed by the state district court.[12] Subsequent requests for review of this ruling to the Louisiana Court of Appeal, First Circuit and the Louisiana Supreme Court were denied May 16, 2003 and June 25, 2004, respectively.[13] A

---

[8]See Letter from the Louisiana Supreme Court relative to Writ No. 2001-KH-993, State Rec. Vol. 2.

[9]*State ex rel. Smith v. State*, 804 So.2d 630 (La. 12/14/01).

[10]See Fed. Rec. Doc. 1 at p. 3 and Fed. Rec Doc. 20 at p. 2.

[11]Under this rule, a pleading filed by a prisoner acting *pro se* is considered to be filed on the date it is delivered to prison officials for mailing, rather than the date it is received by the court. *Causey v. Cain,* 450 F.3d 601, 604 (5th Cir. 2006). See State Rec. Vol. 8 for a copy of the PCR application.

[12]See State Rec. Vol. 2.
[13]See State Rec. Vol. 8 for a copy of these decisions; see also, *State ex rel. Smith v. State*, 876 So.2d 822 (La. 6/25/04).

second PCR was filed with the state trial court on December 17, 2004[14], which was deemed untimely by the state courts.[15] Although petitioner unsuccessfully sought additional post-conviction relief in the state courts, it is unnecessary to particularize these pleadings for a determination to be made on whether Smith is entitled to federal review and/or relief.[16]

Smith filed the instant federal habeas corpus application with this court on March 27, 2007, the date he signed and dated his petition. The State subsequently filed a response, raising the defense that Smith's petition is time-barred from this court's review.[17] Petitioner Smith filed several objections to the State's response.[18] For the reasons which follow, the court concludes petitioner's federal habeas is time-barred from federal review.

---

[14]The PCR was signed and dated by petitioner on December 15, 2004. See State Rec. Vol. 2.

[15]See May 3rd, 2005 ruling of the Louisiana Court of Appeal, First Circuit, and March 24, 2006 ruling of the Louisiana Supreme Court in State Rec. Vol. 8. See also *State ex rel. Smith v. State*, 925 So.2d 1224 (La. 3/24/2006). The Louisiana Supreme Court denied relief on the basis of La.C.Cr. P. art. 930.8 and *State ex rel. Glover v. State*, 660 So.2d 1189 (La. 1995). The court also found the PCR to be repetitive.

[16]The State has outlined petitioner's complete procedural history on pages 2-4 of its Answer, see Fed. Rec. Doc. 12.

[17]Fed. Rec. Doc 12.

[18]See Fed. Rec. Docs. 20, 21, and 22.

<u>STATEMENT OF FACTS</u>[19]

During the late evening hours of June 29, 1997, officers with the Slidell Police Department went to a truck stop in Slidell, Louisiana in response to a call that two subjects in a small red pickup were soliciting money from people in the parking lot at the truck stop. When Officer Barry VanShoubrouek arrived there, he stopped Turner's red Chevrolet S-10 pickup. Co-defendant Bobby Turner complied with VanShoubrouek's request to him to exit the vehicle. The only other occupant, defendant, remained in the truck. VanShoubrouek asked Turner what he and defendant were doing. Turner told the officer he was out of money and trying to get back to Greenville, Mississippi. VanShoubrouek ran a NCIC (National Crime Information Center) computer check for outstanding warrants for Turner and determined there were no such warrants. While Officer Rachel Smith was at the passenger side of the pickup talking to defendant, VanShoubrouek noticed from the opposite side of the pickup that defendant had a knife underneath his left leg out of the view of Officer Smith. Defendant told VanShoubrouek the knife

---

[19]The Statement of Facts is taken from the state court's opinion on appeal in *State v. Smith*, 769 So.2d 1280, 1282-83 (La. App. 1st Cir. 2000).

belonged to him. After finding no warrants for Turner, VanShoubrouek went to the police station and returned with a five dollar gasoline voucher to allow Turner to purchase gasoline. VanShoubrouek noted the license plate number of the pickup, gave the voucher to Turner, told Turner and defendant to leave, and warned that if they came back and solicited money they would be arrested.

A few hours later at approximately 1:00 a.m. the following morning, Turner entered a Chevron gas station where station employee Gerald J. Clark was on duty. Turner told Clark his truck needed a jump start. Turner began asking customers at the station if they had jumper cables, but none of them had any.

James Pursley, who lived near the station, was walking to the station to buy chips and beer when he observed a single vehicle, Turner's pickup, parked near the station with the pickup's lights turned off and the motor running. Defendant was in the driver's seat bent over. Pursley went inside the station. Clark asked Pursley if he had jumper cables. Pursley stated he did not, made his purchase and left.

Turner walked up to the counter ostensibly to purchase a candy bar. When Clark was handing over change from the purchase, Turner pulled a knife from his side and told Clark to give him all the money from the cash register. Clark

initially thought Turner was joking but then (realizing Turner was not) gave Turner between $150.00 and $170.00. Turner turned and before walking out told Clark not to follow him as he had a partner outside who was armed with a gun.

St. Tammany Parish Sheriff's Detective Chris Bell went to the Chevron station following the report of the armed robbery. He spoke to Clark and Pursley. Physical descriptions of Turner and defendant and the pickup were broadcast over the police radio frequency. A dog from the Slidell K-9 division was brought to the scene for tracking purposes.

In the meantime, after receiving the police radio broadcast, VanShoubrouek realized that Turner and defendant and their vehicle matched the descriptions given in the broadcast. This information was conveyed to Bell along with the license number of the pickup.

Later, after being advised by Pearl River Patrolman David King that he was watching a pickup (matching the one being sought) at a Chevron station in Pearl River, Bell and other deputies went to the location, where they apprehended defendant and Turner, placed them under arrest, and advised them of their constitutional rights, all of which occurred within a few hours of the instant armed robbery. During a search of defendant, the police seized $70.00 in cash from his

person. An inventory search of Turner's truck yielded a large knife that was in the glove compartment.

Pursley made positive identifications of Turner and defendant after their arrests. Clark, who only saw Turner at the time of the robbery, identified Turner as the robber.

Turner confessed to the armed robbery in a tape-recorded statement to St. Tammany Parish Deputy Sheriff Jim Richard on July 1, 1997. On the following day, Richard received notice defendant wanted to speak to him. Initially, defendant told Richard that he was sleeping in the pickup during most of the night of the armed robbery. When Richard informed defendant he did not believe the statement, defendant changed his story and stated he would admit he was an accessory or principal to the crime, while claiming that he did not know Turner was going to commit the robbery and that he did not receive any of the stolen money.

Turner's trial testimony included the following. Defendant drove the pickup to the Chevron station where the instant armed robbery occurred. Defendant gave Turner the knife. Defendant told Turner to go inside the station and told him not to "threaten the [station employee] or pull [the] knife on [the employee]" but to

"let [the employee] see the knife," and tell the employee to give him all the money.

Defendant also told Turner that, if Turner did not threaten the employee or pull the knife, Turner's conduct would not be an armed robbery. Turner stated that defendant drove the pickup from the scene of the robbery and that he and defendant divided the stolen money ($168.00) equally between them.

## STATUTE OF LIMITATIONS

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner has one year within which to bring his habeas corpus claims pursuant to 28 U.S.C. § 2254, with this one year period commencing to run from "the latest of" either the date the petitioner's state judgment became final or the expiration of the time for seeking review. See 28 U.S.C. §2244(d)(1)(A) (West 2010), as amended by the AEDPA, P.L. 104-132, 110 Stat. 1220.  In this case, the *latest* date that Smith's conviction became final, for federal limitations purposes, was 90 days after the December 14, 2001 writ denial by the Louisiana Supreme Court, or on March 15, 2002. This date is the date when Smith could no longer seek review of the highest state court's decision with the United States Supreme Court.  See Sup. Ct. R 13(1); *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003); *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999), *cert. denied*, 529 U.S.

1099, 120 S. Ct. 1834, 146 L. Ed.2d 777 (2000). Accordingly, Smith's one year limitation period commenced to run, at the latest, on March 15, 2002. Under a plain reading of the statute, Smith's habeas limitation period would expire one year later, on March 15, 2003. Smith did not file the instant action until March 27, 2007, more than 4 years later.[20] Thus, his challenge to his 1997 conviction must be dismissed as untimely, unless the one-year statute of limitations period was interrupted as set forth in 28 U.S.C. §2244(d)(2). Under that statutory provision, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

As the previously mentioned procedural history indicates, Smith signed his first state post-conviction application on September 11, 2002, after **180**

---

[20]The court gives Smith the benefit of the date he signed his federal habeas application. This March 27, 2007, filing date was ascertained via the Court's use of the "mailbox rule." Under this rule, a pleading filed by a prisoner acting *pro se* is considered to be filed on the date it is delivered to prison officials for mailing, rather than the date it is received by the court. *Causey v. Cain,* 450 F.3d 601, 604 (5th Cir. 2006); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Generally, the date a prisoner signs his petition is presumed to be the date he delivered it to prison officials for mailing. *See Colarte v. Leblanc*, 40 F.Supp.2d 816, 817 (E.D. La. 1999) (assumed that petitioner turned his habeas corpus application over to prison officials for delivery to this Court on the date he signed his application); *Magee v. Cain*, 2000 WL 1023423, *4 n.2 (E.D. La. 2000) (inferred that filing date and signature date of habeas petition were the same); *Punch v. State*, 1999 WL 562729, *2 n.3 (E.D. La. 1999) (may reasonably be inferred that prisoner delivered habeas petition to prison officials for mailing on date he signed petition).

days of the one year federal limitations period had lapsed. A matter is pending for §2254(d)(2) purposes as long as the ordinary state collateral review process is in continuance. *Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002). Thus, petitioner's post-conviction application was pending until the Louisiana Supreme Court denied his request for supervisory writs on June 25, 2004.[21] Petitioner's second PCR was filed with the state trial court on December 17, 2004, after a lapse of an additional **173** days of the limitations period. If the second PCR "stopped the clock", petitioner would have used up **353** days of his 365 day limitations period. However, as argued by the State, the second PCR did not stop the limitations period from running because that application was untimely filed in the state courts. *See Pace v. Guglielmo*, 544 U.S. 408, 417, 125 S.Ct. 1807, 1814, 161 L.Ed. 2d 669 (2005)(State post-conviction application not "properly filed" if it was rejected by the state court as untimely, thus petitioner not entitled to statutory tolling for the time the untimely post-conviction application was pending). Petitioner's federal limitations period thus expired on December 29, 2004, or 12 days after the filing of the second non-tolling PCR and more than two

---

[21]See *State ex rel. Smith v. State*, 876 So.2d 822 (La. 6/25/04).

years before Smith's federal petition was filed with this court. Petitioner's federal habeas is thus untimely filed unless there is a basis for equitable tolling.

## EQUITABLE TOLLING

The Fifth Circuit has held that the AEDPA's one-year period of limitations may be equitably tolled, but only in "rare and exceptional circumstances". *Davis V. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999). "'Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'" *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057, 120 S.Ct. 1564, 146 L.Ed.2d 467 (2000), quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996). In order for equitable tolling to apply, the applicant must diligently pursue his §2254 relief. *Id.* Moreover, the petitioner bears the burden of establishing entitlement to equitable tolling in the AEDPA context. *Philips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000).

Smith makes several arguments in support of equitable tolling. First, he claims that in his state PCR which was filed with the state district court on December 17, 2004, should not have been considered untimely filed because it was

based upon "newly discovered evidence".[22] The alleged "newly discovered evidence" which Smith points to is a report called "In Defense of Public Access to Justice", researched and compiled by The National Legal Aid & Defender Association (NLADA). This report concludes that the Louisiana indigent defense funding structure is not uniform among the parishes and does not secure qualified counsel for poor defendants.[23] Smith argues that the state court erred in refusing to consider the report to be "new evidence" which would have prevented his state post-conviction filing in 2004 from being considered untimely.

Insofar as Smith is attempting to challenge the state court's determination under La. C. Cr. P. art. 930.8 (A)(1) that his claim does not fall under an exception to the *state* time limitations period, such a claim would not be cognizable in a federal habeas court. Violations of state law and procedure which do not infringe specific federal constitutional rights are generally not cognizable in habeas corpus. Federal habeas relief is not available for alleged errors in the interpretation or application of state law. *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L. Ed.2d 385 (1991). It is well established that federal habeas review is limited to questions of constitutional dimension. *See generally*,

---

[22]See Fed. Doc. 20, Traverse at. p. 3.

[23]See Copy of NLADA Report at p. 68 in State Rec. Vol. 2.

*Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992), *cert. denied*, 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); *Castillo v. Johnson*, 141 F.3d 218, 222 and 224 (5th Cir.), *cert. denied,* 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998). In sum, this court must accept the state courts' interpretation of its own law.

The court also construes Smith's petition liberally, since it is written by a *pro se* petitioner. Thus, to the extent petitioner may be attempting to claim that the NLADA report constitutes "newly discovered evidence", as it is understood as a *statutory exception* to the general one year *federal* limitations period pursuant to 28 U.S. C. §2244(d)(1)(D), the court finds his claim unavailing. Section 2244(d)(1)(D) provides that the one year federal limitations period may commence from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." "Newly discovered evidence" has a well-settled meaning: it is "evidence which could not have reasonably been presented" by petitioner in an earlier proceeding. *Townsend v. Sain*, 372 U.S. 293, 317, 83 S.t. 745, 759, 9 L.Ed.2d 773 (1963). Such evidence "must bear upon the constitutionality of the applicant's detention;

the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."

In this case, it is true that the NLADA report was not prepared until March of 2004 so petitioner could not have presented it to the state courts earlier. However, petitioner must show that specific evidence in the report has bearing on the constitutionality of his own conviction; this he has not done.

Smith also claims that he should be granted an exception to the one year limitations period because he is "actually innocent" of the crime for which he is convicted. In support of an actual innocence exception, Smith refers to an affidavit of his co-defendant, Bobby Turner, which Smith obtained and submitted with his state PCR application in 2005.[24] In the affidavit, Turner recants his statement made to the police that implicated Smith in the planning and execution of the armed robbery. He also recants his trial testimony implicating Smith as well as Smith's girlfriend in the armed robbery. [25]

---

[24]The state appellate court found that petitioner's claim was untimely and that his "allegations do not support a finding that the facts upon which the claims were predicated were not known to relator." *See* Ruling in Writ No. 2005-KW-03348, State Rec. Vol. 8.

[25]A copy of the affidavit can be located in State Rec. Vol. 3 as an exhibit to the Sept. 29, 2005 PCR filed with the state district court.

The U.S. Fifth Circuit has addressed the issue of whether the one year limitations period established by §2244 (d) contains an exception for petitioners claiming actual innocence of the crimes of which they have been convicted and has flatly refused to find such an exception. See *Cousins v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002; *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000). The Fifth Circuit found that actual innocence is irrelevant to the timeliness analysis because it cannot constitute a basis for justifying equitable tolling of the limitations period. *Cousins* at 849. "[G]iven that many prisoners maintain they are innocent", the Fifth Circuit in *Felder* specifically ruled that actual innocence claims do not constitute the "rare and exceptional" circumstance required for equitable tolling to apply. *Felder* at 171.[26]

To the extent that Smith may be trying to argue that his one year limitations period should not be considered to have commenced until he actually

---

[26]Other Circuits which have had an occasion to rule on the issue have reached varying conclusions on whether a showing of "actual innocence" may provide an exception to the federal one year limitations period. The First Circuit, like the Fifth Circuit, has rejected such a claim. *David v. Hall*, 318 F.3d 168, 171 (5th Cir. 2000). The Tenth Circuit and Sixth Circuit have allowed actual innocence to be raised when relevant to equitable tolling, *see, e.g.*, *Souter v. Jones*, 395 F.3d 577, 599 (6th Cir. 2005), and the Eighth Circuit has found it not to apply to a case before it but stated that the court was not finding that actual innocence could *never* be relevant to a request for equitable tolling. *Flanders v Graves*, 299 F.3d 974 (8th Cir. 2002). See further discussion of the varying federal courts' treatment of claims of an "actual innocence exception" in *Perez v. Evans*, 2009 WL 2104853 at p. 16-18 (C.D. Cal. 2009).

obtained the affidavit of his former co-defendant pursuant to 28 U.S.C.

§2244(d)(1)(D),[27] the court finds such a claim insufficient. As the Fifth Circuit has

explained in *Flanagan v. Johnson*, 154 F.3d 196 (5th Cir. 1998), a habeas

petitioner should not confuse his *knowledge* of the factual predicate of his claim

with the time permitted for gathering evidence in support of his claim (emphasis

added). A petitioner is not entitled to an extended delay while he gathers every

scrap of evidence that might support his claim. *Id.* at 199. Petitioner's claim that

he was not the mastermind behind the robbery is a factual predicate of which he

would obviously be well aware, presumably as of the date of the robbery itself. [28]

   Moreover, Smith does not show that the state courts' rejection of his

actual innocence claim and the state courts' implicit finding that the facts upon

which his claim/s were predicated were known to him at an earlier time, are clearly

contrary to federal law as determined by the U.S. Supreme Court. See 28 U.S.C.

---

[27]This provision provides that the one year limitations period will commence on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

[28]In fact, in Smith's original statement made to the investigating officer on July 3, 1997, Smith claimed he was sleeping of and on in the truck and was not aware that Turner had committed the robbery. When the investigating officer indicated that he did not find Smith's story believable, Smith then advised him that he *did* know about the robbery but that Turner had not given him any money. See Statement of July 3, 1997, State Rec. Vol. 3.

§2254(d)(1). Specifically, the U.S. Supreme Court has never expressly decided that there is an "actual innocence" exception to the §2254 statute of limitations for habeas petitioners.

It is also worth noting that petitioner obtained the affidavit of co-defendant Bobby Turner on December 30, 2004.[29] However, he did not present his claim that his co-defendant had perjured himself (along with the supporting affidavit) to the state court until he filed a September 29, 2005 post-conviction application. Thus, even if the court accepted petitioner's actual innocence argument, "[u]nder long-established principles, petitioner's lack of diligence precludes equity's operation." *Pace v. DiGuglielmo*, 544 U.S. 408, 419, 125 S.Ct. 1807, 1815, 161 L.Ed.2d 669 (2005) citing *Irwin v. Department of Veteran's Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). In order for equitable tolling to apply, the applicant must diligently pursue §2254 relief. *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999). "'[E]quity is not intended for those who sleep on their rights.'" *Id.* (quoting *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999)).

---

[29]See Affidavit of Bobby Turner, State Rec. Vol. 3.

For all of the afore-mentioned reasons, the court rejects Smith's request for recognition of an actual innocence exception to the federal limitations period and finds no other circumstances present in Smith's case to warrant equitable tolling.

Accordingly,

<u>RECOMMENDATION</u>

Based upon the foregoing, **IT IS HEREBY RECOMMENDED** that the instant habeas corpus petition be **DENIED** with prejudice as untimely.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court,

provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996)(en banc).[30]

New Orleans, Louisiana, this ___28th___ day of _____May_____, 2010.

_____
LOUIS MOORE, JR.
United States Magistrate Judge

---

[30]*Douglas* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.